UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

            v.

KYRIN CONYERS,
      a/k/a "Kyro,"

            Defendant.

23 Cr. 457 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

The Government filed motions *in limine* on six matters. The Government argues that (1) the courtroom should be partially closed during the testimony of an active undercover N.Y.P.D. officer, (2) the Government should be permitted to continue withholding the true name of that officer; (3) the undercover officer should be permitted to testify under a pseudonym, (4) exhibits showing the undercover officer's face should be filed under seal, (5) cross-examination of law enforcement witnesses on certain topics should be excluded, and (6) evidence or arguments concerning the sentencing consequences of any conviction should be precluded. ECF No. 167 ("Gov. Mot.") at 1–2.

Defendant's motions *in limine* address two matters. First, Defendant argues that the Government should be precluded from introducing various images and videos from his Instagram account and cell phone into evidence; and second, he moves to exclude four videos recorded by an undercover N.Y.P.D. officer. ECF No. 164 ("Def. Mot.") at 2. For the reasons that follow, the parties' motions are GRANTED in part and DENIED in part.

## BACKGROUND

The Court assumes the parties' familiarity with the procedural and factual background of this case. Defendant Kyrin Conyers is charged in a Superseding Indictment with: (1) conspiring

to distribute controlled substances—specifically, at least 280 grams of cocaine base (commonly known as "crack" cocaine), as well as detectable amounts of oxycodone and marijuana—between August 2022 and September 2023; (2) distributing and possessing with the intent to distribute crack cocaine on or about March 9, 2023; and (3) using, carrying, and possessing firearms in connection with the drug trafficking crimes charged in Counts One and Two.

## LEGAL STANDARD

A district court's inherent authority to manage the course of trials encompasses ruling on motions *in limine*. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). "The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *United States v. Paredes*, 176 F. Supp. 2d 192, 193 (S.D.N.Y. 2001). Rulings on motions *in limine* are subject to change as the trial unfolds. *Luce*, 469 U.S. at 41–42.

## DISCUSSION

### I.    The Government's Motions *in Limine*

#### A.  The Undercover Officer

The parties agree on most issues concerning the testimony of the undercover N.Y.P.D. officer (the "UC"). The defense does not object to the partial closure of the courtroom during the UC's testimony, provided that the trial transcript is not sealed, simultaneous audio of the testimony is broadcast in a nearby courtroom, and that Mr. Conyers' immediate family is permitted to attend in person. ECF No. 12 ("Def. Opp.) at 2. Nor does the defense object to the UC testifying using a pseudonym, or to sealing exhibits showing the UC's face. *Id.* Accordingly, with the provisos above, the Court GRANTS the Government's motions to partially close the courtroom during the UC's testimony; allow the UC to testify under a pseudonym; and to seal

2

exhibits that depict the UC's face.  Also, if requested, the Court will permit one person from the District's press pool to be in the courtroom for the UC's testimony provided that member agrees to protect the UC's identity.

### 1.  True Name

The defense does object, however, to the Government withholding the UC's true name. *Id.* at 3. The defense maintains that it requires the UC's name in order to properly investigate this central Government witness. *Id.* The defense offers to learn the UC's true name on an Attorney's Eyes Only ("AEO") basis and explains that it "would refrain from using the UC's true name in court or disclosing it to anyone else, including the defendant." *Id.* This procedure, the defense argues, would "effectively 'balance the potential danger to the witness against the need of the defense for the information.'" *Id.* (quoting *United States v. Cavallaro*, 553 F.2d 300, 304 (2d Cir. 1977)).

The Court agrees. As the defense points out, numerous other cases in this District have followed similar procedures. *See, e.g.*, *United States v. Mial*, No. 21 CR. 499-05 (PAE), 2022 WL 5240988, at *6–7 (S.D.N.Y. Oct. 6, 2022); *United States v. Esteves*, 20 Cr. 686 (JGK), ECF Nos. 134, 148 at 3–4; *United States v. Urena*, 8 F. Supp. 3d 568, 572*; United States v. Alimehmeti*, 284 F. Supp. 3d at 491 n.9; *United States v. Felton*, 17 Cr. 21 (WHP), ECF No. 357 at 3; , 15 Cr. 95 (AJN), ECF No. 1844; *United States v. Grant*, 04 Cr. 207 (BSJ) (a May 5, 2005 minute entry explains that the Court ruled that the Government "will disclose the name of the police officer for purposes of [the defense's] investigation only and the defense will not use the officer's name in any fashion, including publication").

Accordingly, the Government is ordered to provide the UC's true name to defense counsel on an AEO basis. Defense counsel shall refrain from using the UC's true name in court and is prohibited from disclosing it to anyone else, including the Defendant.

### B. Cross-Examination

Next, the Government argues that the Court should curtail the defense's cross-examination of two N.Y.P.D. detective witnesses ("Detective-1" and "Detective-2," together the "Detective Witnesses"). Gov. Mot. at 19–26. Specifically, the Government asks that cross-examination about prior complaints into the Detective Witnesses' police work, drawn from the City of New York's Civilian Complaint Review Board ("CCRB") and N.Y.P.D. personnel files, should be off limits. *Id.* The defense disagrees. *See* Def. Opp. at 4–5.

Rule 608(b) of the Federal Rules of Evidence "vests the district courts with discretion to permit cross-examination into 'specific instances of conduct' if the conduct is 'probative of [that witness's character for] truthfulness or untruthfulness.'" *United States v. Cedeno*, 644 F.3d 79, 82 (2d Cir. 2011) (citing Fed. R. Evid. 608(b)). Specifically, when "assessing whether a defendant may cross-examine a police officer regarding a CCRB complaint, 'the [c]ourt must consider two threshold questions: (1) did the incidents that gave rise to the CCRB complaints involve dishonest conduct bearing on [the officer's] character for truthfulness; and (2) even if the underlying conduct did not involve dishonesty, did the CCRB find that [the officer] was not credible?'" *United States v. Steele*, 216 F. Supp. 3d 317, 325 (S.D.N.Y. 2016) (quoting *Gonzalez v. United States*, No. 12-CV-5226 (JSR), 2013 WL 5289793, at *13 (S.D.N.Y. Sept. 19, 2013)).

At this time, there is no basis to allow cross-examination on these prior instances of alleged misconduct. None of the CCRB or internal N.Y.P.D. allegations bear on Detective Witnesses' character for truthfulness, and there is no indication that the CCRB found either

officer to be not credible. Therefore, based on the information currently before the Court, cross-examination on those topics is improper and will be excluded. If the Government provides the defense with additional *Giglio* material that changes this calculus, the Court will reconsider its ruling.

### C. Sentencing Consequences

Lastly, the Government argues that the defense should be precluded from offering evidence or argument about the mandatory sentencing consequences of a guilty verdict. Def. Mot. at 26–27. The defense counters that a decision on this issue is premature. Def. Opp. at 7.

Among the many instructions that this Court will give the jury upon the conclusion of the trial is that the question of possible punishment is not for the jury to decide. This standard instruction makes clear to the jury that "the question of possible punishment of the defendant is of no concern to you and you should not, in any sense, enter into or influence your deliberations." *See, e.g.*, *United States v. Peraire-Bueno*, 24 Cr. 293 (JGLC) (S.D.N.Y. 2025); *United States v. Olangian*, 12 Cr. 798 (LAP) (S.D.N.Y. 2016).  Accordingly, the defense is not permitted to argue about or reference the potential sentencing consequences of a conviction during trial.

### II.    The Defense's Motions *in Limine*

### A. Instagram Posts and Cell Phone Files

Defendant argues that the Government should be precluded from introducing into evidence images and videos from his Instagram account and cell phone, including those that quote or reference rap lyrics. Def. Mot. at 2–7. According to Defendant, these exhibits (which include GX 702, 703, 707, and 711) are "minimal[ly]" relevant and present a risk of unfair prejudice that greatly outweighs their probative value. *Id.* at 4, 5. The Government argues that all

of these images and videos—even those that reference rap lyrics—are "probative of narcotics and firearms offenses" and should be admitted because they "depict or describe narcotics, large sums of cash, jewelry, and firearms (and the defendant posing with some of these items)." ECF No. 177 ("Gov. Opp.") at 5, 6.

Although the "Second Circuit has not provided specific guidance as to how courts should address the admissibility of rap lyrics . . . a rule-of-thumb has emerged from court decisions that have considered this issue." *United States v. Jordan*, 20 Cr. 305 (LDH) (E.D.N.Y. 2024), ECF No. 232 at 8. And that rule is clear: "the relevance of rap lyrics as trial evidence depends on the existence of a specific factual nexus between the content of rap music and the crimes alleged." *Id.* (citing *United States v. Wiley*, 610 F. Supp. 3d 440, 446 (D. Conn. 2022) (admitting lyrics "only where the Government can point to lyrics that communicate specific details related to the charged conduct"); *United States v. Sneed*, 14 Cr. 159, 2016 WL 4191683, at *5–6 (M.D. Tenn. Aug. 9, 2016) (excluding a rap video that "depict[ed] men (including Defendant Sneed) rapping about selling drugs" but did not include any "reference to a specific gang or group of individuals working in concert to sell those drugs," and concluding that "rapping about selling drugs does not make it more likely that Defendant Sneed did, in fact, sell drugs"); *United States v. Gamory*, 635 F.3d 480, 493 (11th Cir. 2011) (holding a rap video irrelevant because there was no evidence that the defendant "authored the lyrics or that the views and values reflected in the video were, in fact, adopted or shared by" the defendant)).

Here, the Government has failed to demonstrate the required factual nexus necessary to admit the challenged rap lyrics as evidence. General lyrical references to guns, drugs, or cash—absent any specific tie to the charges or individuals at issue—are not probative and do not "bear a specific nexus to the underlying offense conduct alleged in this case." *Jordan*, ECF No. 232 at

6

12. Meanwhile, "the references to violence and possible allusions to police misconduct, and the use of profanity, present a risk of unfair prejudice to the Defendant[]." *United States v. Johnson*, 469 F. Supp. 3d 193, 222 (S.D.N.Y. 2019); Fed. R. Evid. 403.

The Government relies on *United States v. Carpenter* to support its position. 372 F. Supp. 3d 74, 77 (E.D.N.Y. 2019), *aff'd*, 2022 WL 16960577. In *Carpenter*, however, the court observed that "the videos and lyrics refer[ed] to individuals involved with the [d]efendant in drug trafficking; explain[ed] the [d]efendant's preferred process for preparing and delivering drugs; . . . and refer[ed] to the minimum quantity of illegal drugs that the [d]efendant sold to a given customer." *Id.* at 77. These kinds of specific ties to the case at hand and to the Defendant on trial are notably absent here. *See United States v. Herron*, No. 10-CR-615 (NGG), 2014 WL 1871909, at *4 (E.D.N.Y. May 8, 2014) ("[C]ircuit courts have admonished trial judges against admitting rap videos or lyrics with merely a tenuous connection to the defendant or issues in the case."); *see also Jordan* at 12 ("rap songs frequently reference the concept of 'breaking down bricks'").

Because exhibits that simply contain rap lyrics and no relevant evidence, such as GX 703, 707, and 711, "do not have a sufficient nexus to the charged drug conspiracy" or to the other charged offenses, and carry with them a risk of unfair prejudice that substantially outweighs their limited probative value, they are inadmissible. *Id.* The jury "should not be placed in the unenviable position of divining a defendant's guilt, in whole or in part, from a musical exposition with only a tenuous relationship to the criminal conduct alleged." *Jordan* at 13–14. The Court therefore excludes GX 703, 707, and 711.

The same cannot be said, however, of GX 702, which depicts a bottle of pills and cash along with the phrase "We at the top now" in a location the Government contends is significant

to the charged offenses. Gov. Opp. At 16. This exhibit, which is relevant to the criminal conduct alleged and is sufficiently probative so as to not be substantially outweighed by a risk of unfair prejudice, is admissible. The Court will discuss the remaining disputed exhibits, which include images and videos depicting Mr. Conyers holding guns, Mr. Conyers present in relevant locales, or alleged drug sale proceeds, at the Final Pretrial Conference.

### B. Uncharged Crimes

Finally, the defense moves to exclude four audio-video recordings taken by the UC on March 9, 2023, under Federal Rules of Evidence 403 and 404(b). Def. Mot. at 7–10. The recordings allegedly show Mr. Conyers agreeing to sell a firearm to the UC, accepting $700 for the firearm, and then failing to deliver the firearm or refund the money. *Id.* at 7. The defense argues that this evidence suggests that Mr. Conyers committed the "uncharged crimes" of firearms trafficking, theft, or fraud, and would therefore "create a significant risk that the verdict on the charged counts would be unduly influenced by a perception of propensity toward criminality." *Id.* The Government maintains that these recordings are "highly probative direct evidence of the charged firearms offense" and, while prejudicial, are not *unfairly* so. Gov. Opp. at 1. Therefore, the Government argues, the recordings should be admitted. *Id.* at 5–12.

On this question, the Court agrees with the Government. "Direct evidence of the crimes charged in the indictment is considered relevant and admissible without reference to Rule 404(b)." *United States v. Clanton*, 758 F. Supp. 3d 93, 102 (E.D.N.Y. 2024) (citing *United States v. Towne*, 870 F.2d 880, 886 (2d Cir. 1989)). "To be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency." *United States v. Kahale*, 789 F. Supp. 2d 359, 381

(E.D.N.Y. 2009), *aff'd sub nom.*, *United States v. Graham*, 477 Fed. App'x 818 (2d Cir. 2012) (citation omitted).

"Moreover, it is well settled in the Second Circuit that 'evidence of uncharged criminal activity is not considered other crimes evidence under Fed. R. Evid. 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial.'" *United States v. Forney*, No. 24 Cr. 146 (KAM), 2025 WL 2208298, at *8 (E.D.N.Y. Aug. 4, 2025) (quoting *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000)).

Here, the challenged videos are not being offered to demonstrate Mr. Conyers' criminal propensity; rather, they are being "offered as evidence of the defendant's firearms possession, narcotics trafficking, and the close relationship between them." Gov. Opp. at 12. This evidence is plainly relevant: Count Three charges Defendant with possessing a firearm in connection with a drug trafficking offense, and the Government alleges that these videos depict Defendant possessing a firearm "in the midst of a drug deal that is central to the charged case." *Id.* at 9. These videos are also "inextricably intertwined with the evidence regarding" both the charged firearms and narcotics offenses. The Government alleges that, in the videos, "the defendant was attempting to sell a firearm to a person he believed to be a narcotics customer." Gov. Opp. at 10. This evidence bears not only on the charged firearms offense, but also on the narcotics charges.

Finally, the probative value of this evidence is not substantially outweighed by the risk of unfair prejudice; again, the videos are not being offered to prove any propensity for criminality and the risk of *unfair* prejudice is low. Fed. R. Evid. 403; *see United States v. Jimenez*, 789 F.2d 167, 171 (2d Cir. 1986) (explaining that "*all* evidence incriminating a defendant is . . . prejudicial"). Accordingly, the videos are admissible.

9

## CONCLUSION

For the foregoing reasons, the parties' motions *in limine* are GRANTED in part and

DENIED in part. The Clerk of Court is respectfully directed to terminate ECF Nos. 164 and 167.


Dated: January 19, 2026
       New York, New York


SO ORDERED.

JESSICA G. L. CLARKE
United States District Judge